Good morning, your honors. My name is Ben Coleman. I represent the appellant Laron Carter. I wanted to focus on statute of limitations and the Confrontation Clause, and I'd like to start with the Confrontation Clause, if that was okay with the court. In Coy v. Iowa, the Supreme Court made it clear that the Confrontation Clause guarantees in-court, face-to-face And that's really the essence of the clause, and it cited a very rich historical recitation of the Confrontation Clause. So it's only in extraordinary circumstances that that right can be, I guess, compromised. In Maryland v. Craig, the Supreme Court held that in certain unusual circumstances, for sort of the medical necessity of a witness, that that right can be compromised by video testimony. That can be a substitute for in-court, face-to-face confrontation. The cases that have sort of interpreted that principle have all come out before Crawford v. Washington, and it's arguable that the circumstances and the landscape are now different after Crawford. But even under those older cases, we believe that there were not sufficient circumstances to justify the video testimony in this case. We have a situation here where the witness was pregnant. Perhaps there would need to be a delay of about eight to ten weeks until her pregnancy was finished, and she could then travel to court to testify. Given that relatively short duration, there was no reason why the trial couldn't be continued or these two counts as this particular victim couldn't have been severed to accommodate Mr. Carter's Confrontation Clause rights. Particularly, this witness was a critical witness in the case. And the cases that have generally allowed a witness to testify by video have usually involved witnesses that were not critical. They perhaps were testifying about a point that really wasn't disputed at the trial, or they were maybe a secondary or tertiary type witness. This was the most important witness in the case as to those two counts. Does it matter that in this case, the video was like this? It's live video both ways. We get to see the individual that we're talking to. They get to see the witness. The witness got to respond. It's not a one-way video like it was in the Craig case. Well, I certainly think on a scale of things, telephone testimony, one-way video, two-way video. Two-way video is certainly the best of those three. But one of the problems is that the two-way video didn't allow for the face-to-face confrontation with the defendant. And that's really what the rich historical tradition of the Confrontation Clause, it comes down to the fact that the defendant has the right to, in the same room, look eye to eye with the witness and have that witness testify right there in front of the defendant. And in this case, the witness wouldn't even see the defendant on the two-way video. But that's also true in the Craig case, right? That's correct. And the difference in the Craig case is that, and again, assuming Craig survives Crawford, is that that was a six-year-old witness and the emotional trauma that would have been inflicted on that witness, we don't know whether it would have been one year, two years, five years until that witness would have been able to sustain that trauma and testify in court. Here we're talking about eight to ten weeks, perhaps, for the witness to be ready to come into court and testify. And I think that's a significant difference. I mean, a court can't indefinitely continue a trial for years to wait and see, perhaps the witness, maybe in two years or four years, will be able to testify in court. Here, we know this pregnancy is going to end relatively soon. And then, of course, there might be a short period of recovery after the pregnancy. But this witness could be in court in eight to ten weeks, give or take. And in addition, these counts could have been severed. There was no reason that these counts had to have been tried with the other 12 counts. This incident occurred years after the other incidents in the case. So there was a really an easy fix to the problem. And for all those... My counsel, Judge Gould, if I could interject a quick question. Could the government have taken the deposition of this witness and avoided the confrontation clause issue? I don't think so. I think it comes back down to the same issue, which is that Mr. Carter was in custody at the time. He wouldn't have been, presumably, able to attend the deposition. But even if... Had he been able to attend the deposition, would that have been different? I still don't think it would have been different, though. But let's assume he could have traveled to Minnesota to do the deposition. Still, the confrontation clause guarantees the witness to be in court to testify, both in front of the defendant and in front of the jury, live. And I don't think a videotaped deposition would have been an adequate substitute. Again, I think the cases suggest that in this situation, the reasonable and proper course is just to delay the trial briefly, or to sever the counts in this case, to allow the witness to come into court. So I don't think the deposition... I don't think there's really a different analysis between a deposition and the video testimony. Okay, thank you. The remaining question on this issue would be harmless error. In COI, the Supreme Court held that the way the harmless error analysis works is that you segregate out the witness's testimony, and then you look at what's left. And in this case, the government has some circumstantial evidence through documents that perhaps Mr. Carter was involved in the travel of this witness from Minnesota to California, and perhaps in some advertisements for, you know, we don't have really enough evidence to connect him to what exactly happened, how this witness, and why this witness came, what Mr. Carter's role was in that, and what Mr. Carter's role was in her alleged prostitution after she came to California. So it's our position that when you excise her testimony, the court cannot say that the error was harmless beyond a reasonable doubt, which of course is the highest harmless error standard. So what is it you want us to do with respect to these counts? We would like the court to reverse these two counts of conviction. We'd also ask the court to reverse the sentence, because these two counts were the ones that carried the highest guidelines. We reverse the counts outright, and that's the end of it, or they reverse and the government can retry? Neutral. Neutral. Certainly the government could go forward with a neutral. So we'd ask for the reversal of those counts, and then the reversal of the sentence as well for resentencing, assuming the other counts stayed. That does bleed into my statute of limitations argument that I did want to address. And one thing I did want to say is related to the Confrontation Clause claim is that there's an issue about preservation as to the statute of limitations. And one thing I think the court could do is that if the court vacated the judgment because counts 13 and 14 are reversed, the court could send the case back to the district court for consideration, number one, of the statute of limitations in the first instance, because the judgment will now be vacated. And number two, the Supreme Court is about to decide it in a very important double jeopardy case, which is important in this case as well. And therefore, the court could vacate the judgment, send the case back down for consideration of both statute of limitations and double jeopardy once the Supreme Court decides Gamble, which it will likely do in the fall or perhaps later next term. My counsel, Judge Gould, on the Gamble issue, don't we normally follow Supreme Court precedents until they choose to change them? So that, I mean, the fact that there's a case for certs granted where they might get rid of the dual sovereignty idea is sort of a non-starter just for me individually. Like it seems to me that we have to follow the existing precedent and if the court changes that, I'm sure you'd be able to get a cert petition granted. Well, I guess I agree with Your Honor that obviously the court takes the laws that exist today. By the same token, a defendant is entitled to any changes in the law while the case is on direct review. So I think for an inefficiency point of view, it wouldn't necessarily make sense to rule based on the current state of dual sovereignty, knowing that the Supreme Court is going to be deciding this case very soon, then have me take a petition to the Supreme Court and then for them to send it back down for reconsideration in light of Gamble. Well, that's not something GVR has done all the time. It is, but what I think would, again, I think the court could just send the case back down and let this all be hashed out in the district court if the court were to vacate those other two counts. Then would the district court have to wait for that decision from the Supreme Court before it decided? I think that would be the best course. I think that we all want to know what the Supreme Court has brought back. I think he's in Terre Haute, Indiana right now. By the time he's brought back to California and the whole process unfolds, I think we'll probably be pretty close to a decision from the Supreme Court anyhow, so I don't think there's going to be that much delay. But the bottom line is that he's in custody. I don't think it prejudices the government. He's in custody, so if the court waits until the Supreme Court decides, or this court waits until the Supreme Court decides, I don't see the prejudice in doing so. In fact, it seems to me to be the most efficient route to take in these circumstances. All that being said, I did want to just spend a couple of minutes on the statute of limitations argument. If the court wasn't inclined to just remand this for consideration in the first instance, it's our position that at the very least under this court's decision in lieu, this court can consider an ineffective assistance of counsel claim on direct appeal, and if the court were to agree that the statute of limitations were violated with respect to counts 1 through 10, Mr. Carter would certainly suffer prejudice, because those counts should have been dismissed, and it would be deficient performance for the lawyer not to have filed the statute of limitations motion. Here those counts all occurred, and it's undisputed, those counts all occurred before Section 3299 was enacted in 2006. It's our position that based on United States v. Richardson, which the statute of limitations provision does not apply retroactively to cases or conduct that occurred before the limitations provision was enacted. In addition to the Third Circuit case, there's also when Congress has intended for limitations provision to apply retroactively, what it has done in statutes that appear right around 3299 is that includes a specific note in the statute that says this particular statute of limitations is meant to apply to offenses that occurred before its enactment, and in this case 3299 does not contain that type of note. So we think that it's fairly clear that the statute does not apply to offenses that occurred before the date. So then the only way that the government can get around the statute of limitations problem is if these two counts constitute sexual abuse of a minor, as that term is defined in 3283. Again, we've cited a Supreme Court case called Bridges, which makes clear that it's a categorical approach that applies in this circumstance, and these two specific statutes do not categorically require sexual abuse of a minor. In fact, they don't require any sex act at all based on the precedent. So for those reasons, we believe that counts 1 through 10 should also be reversed for a statute of limitations problem. Counsel, you can only get to this if we're willing to review the IAC in the case, right? I think that's our best argument. It's forfeited otherwise, right? Well, we claim that the delay motion preserved, you know, the delay claim preserved this particular argument that this is a sub-argument in support of the claim, but I think the ineffective assistance vehicle is our better argument that under lieu, that's exactly what this defendant didn't even file a delay motion, any motion whatsoever, and this court still held that it could, on direct appeal, make a finding of IAC because the statute of limitations was violated, the defendant clearly suffered prejudice, and it would be deficient performance to fail to file a winning... What do you do with our case in Shore Chief? Shore Chief addressed a different issue. It did not address 3299, and it's simply the somewhat circular, but very creative repeal by implication argument, and we're not making that argument at all. Leo Shore Chief did not address 3299. It did not address bridges and the categorical approach and whether these offenses fall under 3283, so the case just is not on point, and if the court had no other questions, I would save the remaining time. Thank you, Mr. Coleman. Thank you, sir, for the government. Good morning, Your Honors. May it please the court. Jeffrey Chemerinsky on behalf of the Appellee, the United States. I'll be addressing the challenges to the defendant's conviction. My co-counsel, Assistant United States Attorney Jeff Mitchell, will be addressing any questions regarding the challenges to defendant's sentence. The majority of defendant's claims were never raised before the district court and are therefore waived. Those that were not waived are reviewed for plain error, a standard the defendant cannot meet. Finally, those claims that were raised before the district court do not provide a basis to overturn the defendant's convictions as the district court did not err in its handling of those issues. Starting first with the defendant's statute of limitations claim. In Masaccio v. the United States, the Supreme Court held that the statute of limitations is an affirmative defense. It's not a jurisdictional bar. If not raised before the district court, it's waived. Here, it's clear the defendant did not raise the statute of limitations defense. At no point was the statute of limitations issue brought before the district court. The pleadings on this matter, defendant exclusively cites docket number 206, which is in the government's excerpts of record, pages 37 through 42. At no point in that pleading does the defendant mention the statute of limitations. The district court's ruling on the defendant's delay motion in no way invoked the statute of limitations. At no point was the district court called upon to rule on the applicability of either section 3299 or section 3283 in their retroactivity to the defendant's conduct. In sum, this issue was never raised before the district court, and under the clear ruling of Masaccio v. the United States, this issue is waived. I'm happy to address the applicability of 3299 retroactively. I'm also happy to move to the confrontation clause issue. Well, let's suppose that we decided that we could review a claim of ineffective assistance of counsel. So what happens then with 3299? Yes, Your Honor. Well, first, this case is distinguishable from Lew. The case defendant relies upon in arguing that ineffective assistance of counsel should be a mechanism for reviewing the statute of limitations. In Lew, ineffective assistance of counsel was clearly raised from the very start of the briefing before the Ninth Circuit. It was clearly presented to the Ninth Circuit as the primary issue for the statute of limitations. Here, ineffective assistance of counsel isn't addressed at all until the defendant's reply brief. And under clear Ninth Circuit precedent, dating back to Eberly v. City of Anaheim, an issue raised for the first time on reply is generally not considered by the court. There's no record on the ineffective assistance of counsel claim. The government has not been provided an opportunity to address this claim, and the court does not have the full record on which to rule on this issue. Even if the court were to reach this issue, 3299 provides a mechanism under which 3299 should be found to apply retroactively, and the counts against the defendant would be timely under this statute for three reasons. First, the inclusion of the notwithstanding provision within 3299 makes clear Congress's intent to override all other provisions. In Cisneros v. Alpine Ridge, cited in the government's court, the Supreme Court said, the use of such a notwithstanding clause clearly signals the drafter's intention that the provisions of the notwithstanding section override conflicting provisions of any other section. The Supreme Court also said a clearer statement is difficult to imagine. Here, the inclusion of such a notwithstanding clause clearly indicates Congress's intent, as this court has said in Blackwell, as well as other circuit courts have said. The statute of limitations is a procedural issue, and therefore it's found to apply retroactively. Although Blackwell defense counsel argues was a civil case, other courts have applied that principle to criminal cases as well. In United States v. Nip, for example, the 9-6-3-F-3-8-3-9 reason that the statute of limitations doesn't go to either the elements or the internal structure of the offense, and therefore it's merely a procedural rule. A third reason the Court should find 3299 applies retroactively is the Court's reasoning in Leo Shurchieff, as Judge Bybee just referenced. In Leo Shurchieff, the Court finds 3283 applied retroactively, holding that it was clearly Congress's intent to expand the statute of limitations to encompass a greater course of conduct. The Court should find that 3299 indicated a similar congressional intent. I'm happy to address other questions regarding 3299 or to move to the Confrontation Clause claim. Let's go to the Confrontation Clause. Yes. Defendant's Confrontation Clause claim on appeal is relatively narrow. He argues that the witness was not unavailable because the Court could have granted a continuance or severed those two counts. None of those arguments were presented before the District Court. The defendant never argued, never requested a continuance of any counts after learning of the witness's unavailability. In addition, defense counsel at the District Court never asked to sever these counts. But the District Court, but they clearly did ask that he be permitted to attend a deposition in Minnesota. That's, Your Honor, that's not entirely correct. There were two filings from defense counsel regarding the Confrontation Clause issue. They're at Government's Excerpts of Record 405 and 417. The very first one was raised in response, was filed in response to the government's motion to either take a deposition or do live way two-way video testimony. Defendant's response, which is Government's Excerpts of Record 405, expressed a clear preference for live two-way video testimony. Defense counsel stated that a deposition would present a hardship and would not be manageable under the circumstances. And defense counsel expressed Didn't they say why? Didn't they say that they were worried that they wouldn't be able to get him there? Yes, Your Honor. He said that the logistics of getting him there would be difficult. The logistics of the trial counsel's own personal schedule with other matters would make it difficult to attend a deposition over the weekend. And that's because all of this came up sort of last minute. It came up as the government learned of the various health concerns. Right. And how many days before the start of trial was this? Like a week, right? I believe it was a week to two weeks. So when counsel said that he didn't think it was going to interfere with his tennis date, what he meant was, those are the days I've got to be preparing for this trial. And all of a sudden, I'm going to have to go to Minnesota to take a deposition. That's correct. Those seem like pretty valid concerns. Yes, Your Honor. Although the government presented the opportunity or would have been willing, for example, to go mid-trial to Minnesota. That was certainly an option that was possible. The logistics of how the trip to Minnesota could have been worked out had defense counsel not said, no, I prefer live two-way video testimony. Defense counsel didn't say, we can do a deposition, but here are the ways we can do it. Defense counsel essentially ended that discussion and said, I want two-way video testimony instead. Is that what they said? Or they said, we object, but between these two evils, we're going to choose two-way video? Exactly as you said, Judge Hernandez. It was, and I want to be clear, defense counsel did not consent. Certainly, defense counsel said, of the two, he preferred live two-way video testimony. And he raised the issue that my confrontation rights are being violated. Correct? He did raise that. But in response to the court's question of why a two-way, why a deposition wouldn't have worked here, it was defense counsel's preference, and that was the route the parties went down to do a two-way video conference. Certainly, the two-way video conference in this case was, as I think the court has already recognized, much, provided greater safeguards than even what the Supreme Court allowed in Maryland versus Craig. The two-way video testimony in this case allowed the defense counsel, allowed all parties to see the witness, to see the court. And in addition, the court provided instruction. Yeah, it doesn't really satisfy Coy. And of course, that's the court's dilemma in trying to reconcile Craig and Coy, because Coy makes pretty clear. It's a confrontation between the witness and the defendant, not the defendant's ability to see the witness giving testimony. Yes, Your Honor. But I actually don't think this is the issue defense counsel even raises on appeal, first of all. I think that his issue on appeal is merely about the unavailability and the remedies. It's not about whether the video conference sufficiently protected the defendant's rights. However, it was a two-way video conference, so the witness could see into the courtroom, much like, as I think the court has recognized, Judge Gould can see here. So it did provide the witness an opportunity to observe the court proceedings, as well as it wasn't simply a one-way video conference. But again, I don't think this is the issue defense counsel raises in his briefing. I think the issue in his briefing is a much more narrow question dealing with unavailability and the remedies, which was never raised before the district court, or brought to the district court's attention. The unavailability of this witness is consistent with what this court held in McGuire, in which a witness was similarly seven months pregnant, as well as the unavailability showing is even greater than what the Fifth Circuit held was sufficient in Ecker versus United States. I'm happy to answer any further questions the court has, address any of the other challenges to the defendant's conviction, or to defer to my co-counsel if the panel has any questions about the sentence. I guess I have a question on the liability issues on the confrontation clause. You've noticed, Terry, you've argued that the defendant appellant didn't ask the court for continuance. Didn't ask the court to sever these claims. But is it his obligation to do that, or is it the government's obligation to satisfy the confrontation clause with regard to the evidence they're submitting on their case? Yes, Your Honor. I'd say, first of all, it's defense counsel's obligation to raise a specific objection that puts the issue directly before the district court. The objections that the defense counsel did raise before the district court were addressed. The district court followed the defense counsel's preference for live video testimony over a deposition, and the district court provided every possible protection you can through video conference. Had defense counsel raised a specific objection to either of the two remedies, those could have been addressed by the district court as well. At this point, the Ninth Circuit is writing truly on a blank slate regarding whether those were even remedies the defendant would have wanted at the time of trial. They were never raised. The district court never had an opportunity to address them. The government had never had an opportunity to respond. And so I think it is important that there be a contemporaneous objection with such specific requests. So from your perspective, simply saying, I object, I want to be able to confront my accuser, is not enough. That what you're suggesting is the defense would have to say, I want to have the ability to confront my accuser, and here's why the remedies that are suggested aren't good enough as well. What I'm saying is that the issue has to be presented. Rule 52B, which is the rule about plain air, talks about issues being brought to the attention of the district court. I think certainly the question about the two-way video conference was brought to the attention of the district court. I don't think the issue of whether a continuance or a severance was appropriate were ever in any form brought before the district court. And it's not, for all the reasons that there's a contemporaneous objection rule, those should apply here. The district court, with such a specific remedy or such a specific request, the district court should provide an opportunity to rule on them. With the court's permission, I also should address the harmlessness issue. I think that if the court finds that clear error applies, then it comes up slightly different. But even if the court doesn't find that clear error applies, the court should still find that this is harmless beyond a reasonable doubt. The evidence as to victim J.C. was extremely strong. It included the bus ticket by which the victim traveled from Minnesota to Los Angeles, which had bared the defendant's name as the purchaser of the ticket. It included the back page advertisements on which the victim was essentially the solicitation advertisement for the victim. That back page advertisement traced directly back to the defendant in a number of ways. So you're down to your last second. Did you want Mr. Mitchell to talk? I'm happy to. Yes, Your Honor. All right. Mr. Mitchell will give you a minute. And Mr. Coleman, I will give you an additional minute. Thank you, Your Honor. Good morning. Jeff Mitchell on behalf of the United States. In order to succeed on the sentencing issues, defendant must show that the district court plainly erred on both sentencing issues. If he fails to prove both, his total offense level remains unchanged at 43. In his reply brief, he has invited this court to exercise its discretion and to review de novo. But the questions here are not questions purely of law. For instance, he alleges that his 2010 conviction in Nevada was a prior sex offense. But in order to determine that, it would require a review of the Nevada statute, the elements within the statute, the charging documents, and the conviction documents to determine whether or not they follow the qualifying offenses within 4B 1.5 and 18 U.S.C. 2426. However, this court has declined to exercise this same type of discretion to review de novo in the United States versus Gonzales-Apricio, a case the defendant cites. And for this exact same reasons, because it would require review of those conviction documents. Counsel, Judge Gould, if I could ask this. Assuming for sake of argument that we were to decide to vacate the conviction on the counts involving the confrontation clause issue, does that mean that he gets a re-sentencing automatically? No, Your Honor, I don't believe it does. The conduct underlying those counts, regardless of whether or not the conviction stands, would still be considered as part of relevant conduct. And in order to succeed on appeal on the sentencing issues, he still must prove that the district court erred on both sentencing issues. So in addition to vacating on counts 13 and 14, this court would have to find that the district court erred on the ex post facto clause and the 4B1.5 analysis. So all three factors, I believe, would have to kind of fall in defendant's favor in order to have an effect. Thank you, Counsel. And under plain error review, defendant cannot show that the Nevada conviction is a prior sex offense conviction as defined by 4B1.5. The PSR indicates that he was convicted of pandering, not pandering by force, not pandering of a minor, but just plain pandering. And that is not a qualifying offense under the 4B1.5 analysis. And the PSR actually indicates that he was charged with those qualifying offenses, but they were, in fact, dismissed. So based on this record, the district court did not err, let alone prove his error. And I'm prepared to submit unless the court has questions.  No questions. Thank you, Your Honors. Before talking about the merits on the confrontation clause, I did want to address this last point about the remedy and whether the sentence would have to be vacated. The government, I think, has now made a new argument that somehow if counts 13 and 14 are vacated, that the sentence would not have to be vacated. And their relevant conduct argument that they've just made for the first time right now is incorrect. The problem is that when counts 13 and 14, if they were to go, those were the counts that carried the highest guidelines and set the base for all the grouping increases that followed. So basically, under United States v. Avila and Guiano, which is what we cited in our briefs, the sentencing package becomes unbundled. So this relevant conduct argument doesn't matter. You only get guideline points for offenses that you're convicted of. So the sentence would have to be vacated. As to the merits, I do think it helps to just sort of go through the chronology of what happened. The government is, I think, faulting the quality of the objections below and therefore arguing that these issues aren't preserved. And they've made some points about my brief, which I want to address. But the way this needs to be looked at is the trial is about to begin in February of 2016. On the eve of trial, the government supersedes the indictment, adds several new charges, new victims. So the trial gets postponed to April 19th. Now that there are new counts, the defense files a motion to sever the counts based on that first superseding indictment. District court denies the motion to sever. Then after the district court denies the motion to sever, the government files a superseding indictment on March 30th of 2016, 19 days before the April 19th trial. And then on April 13th, six days before the April 19th trial, they file a motion to allow the witness to testify by video. The very next day, April 14th, the defense files an objection, citing the confrontation clause, saying, I object based on the confrontation clause. He's had less than 24 hours to object at this point. And that very same day, the judge signs an order without a hearing saying, I grant the motion for video testimony without any oral argument on the motion, just on the papers alone. Then in the trial, he files another written submission objecting on the basis of the confrontation clause. And for the government to say with all the last minute things that are that are being done, that somehow the defense has forfeited a confrontation clause claim and has an obligation to run through every different thing that that that the court should do. They have filed the objection twice in writing. At that point, it's for the court to say, listen, you can't do this based on a short term medical unavailability. What are the other suggestions? And leave it to the government. But the defense preserved the claim. Finally, their claim. You know, I cited Coy versus Iowa in my opening brief. I articulated that the requirement of the confrontation clause is live in court testimony. So for the government to say that somehow I didn't raise that, I'm not sure where that's coming from. And then finally, on the statute of limitations issue, they said that I didn't raise ineffective assistance of counsel until the reply brief. Well, that's because our position is that the claim is preserved, that the motion, the delay motion below preserved the claim. When the government said in their response brief, no, we don't think that was sufficient to preserve it. Then in the reply brief, I said it really doesn't matter under lieu because you can look at this through ineffective assistance of counsel. And that's why the case was first cited in the reply brief, because it's our position that the claim is preserved. And we were just responding to the government's claim of waiver. Thank you. Thank you, Mr. Coleman. We thank all counsel for the argument. United States versus Carter is.
judges: Gould, Bybee, Hernandez